IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| DAWN NICOSIA, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>HY-VEE, INC.,<br><br>Defendant. | 4:26-cv-00259-SHL-SBJ<br><br>**ORDER GRANTING MOTION FOR CONDITIONAL CERTIFICATION** |

Plaintiff Dawn Nicosia alleges that Defendant Hy-Vee, Inc. ("Hy-Vee") violated the Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Act ("IMWL"), and similar laws in other states by failing to pay premium overtime wages for hours worked in excess of forty per week. Nicosia moves for conditional certification so that other employees who were allegedly affected by Hy-Vee's conduct may receive notice of this action. Because Nicosia has made the requisite showing that she is "similarly situated" to these other employees, the Court GRANTS her Motion to Certify Class for Issuance of FLSA Notice. (ECF 36.)

## I. BACKGROUND.

### *A. Hy-Vee Department Managers.*

Hy-Vee operates more than 280 retail and grocery stores in eight states in the Midwest. (ECF 38-1, ¶ 6.) Each Hy-Vee store is divided into departments, including what the parties refer to as the "Core Four Departments": Bakery, Food Service, Produce, and Meat. (Id., ¶ 8.) Prior to 2020, the Department Manager positions in the Core Four Departments were all paid hourly and eligible for overtime. (Id.) In early 2020, however, these positions "became eligible to be salaried." (Id.) For the most part, Department Manager positions in the non-Core Four Departments (excluding the Pharmacy Department) have remained hourly only, although there are a small number of people in those positions who are salaried. (Id., ¶¶ 8, 10.)

Department Managers in the Core Four Departments did not automatically become salaried employees in 2020. (Id., ¶ 9.) Instead, Store Directors at each location decided whether to treat the Department Managers as hourly or salaried. (Id.) Store Directors did not need to seek approval to move a Department Manager from hourly to salaried, but rather simply inputted the decision into Hy-Vee's human resources information system. (Id.) In 2022, Hy-Vee established a centralized

Compensation Department that evaluated whether Department Managers and other positions were properly designated as salaried or hourly. (Id., ¶¶ 12–13.) Hy-Vee also provides training to senior leadership at each store about proper FLSA exemptions and classifications. (Id., ¶ 14.)

According to Hy-Vee, the decision whether to treat a Department Manager as salaried or hourly is highly individualized. (Id., ¶¶ 15–17.) The Compensation Department works with senior leadership at each store to evaluate the following as to each Department Manager: the amount of time the Department Manager spends on management duties like ordering, scheduling, performance reviews, direct employee management, and hiring/firing decisions, as compared to hands-on department duties like customer service, production work, and restocking; the number of employees the person supervises; and other related criteria. (Id., ¶ 17.) Hy-Vee also considers the size of the store, expected future growth, and number of full-time equivalent employees. (Id., ¶ 18.) Because these criteria will apply differently depending on context, Hy-Vee has reached varying decisions about the exempt status of Department Managers. (Id., ¶ 22.) For example, although most Department Managers in the Core Four Departments are salaried, approximately ten percent are not. (Id.) Conversely, the vast majority (but not quite all) of the Department Managers in non-Core Four Departments like the Delicatessen, Fast & Fresh, Floral, and Wine & Spirits Departments are hourly. (Id.)

Relatedly, Hy-Vee submits Declarations from Store Directors explaining, among other things, that a person's title does not always show what the employee does or how much responsibility the employee has. (E.g., ECF 38-2, ¶ 10; ECF 38-4, ¶ 9.) For example, Department Managers in some stores manage far more employees than others. (ECF 38-3, ¶¶ 5, 7; ECF 38-4, ¶ 9; ECF 38-6, ¶ 10.) There are also differences in sales volume, staffing, management structure, department size, and operating complexity. (Id.)

Notwithstanding this evidence, when Department Manager positions come open, Hy-Vee posts a uniform job description for them. (*See* ECF 36-10, ¶ 15.) The job description states that the Department Manager must, among other things: provide friendly customer service in-person and on the phone; assist customers by helping them find what they want and with the loading or unloading of heavy items; adhere to Department and Hy-Vee guidelines regarding personal hygiene and dress; and report to work on time. (Id.) According to Nicosia, Department Managers do little recruiting or hiring for their Departments and are not responsible for supervising other employees except when working alongside them. (Id., ¶ 16.) Department Managers have little to

no responsibility for pricing, marketing, or other strategic decision-making. (Id.) Even with respect to things like scheduling, Department Managers must operate within a defined labor budget. (Id.)

*B. The Experience of Named Plaintiff Dawn Nicosia and Other Declarants.*

Nicosia worked for Hy-Vee from June 2020 until May 2025, mostly in stores in Illinois. (ECF 36-10, ¶ 2.) She started as a Cake Decorator, then Bakery Manager in Training, and finally Bakery Manager. (Id.) Until January 2024, she primarily worked at a Hy-Vee store in Peru, Illinois, although she spent time at four other Hy-Vee stores, too. (Id.) In January 2024, she became the Bakery Manager at a Hy-Vee store in Peoria, Illinois. (Id.)

From Nicosia's perspective, it appeared that Bakery Managers in other stores performed the same or substantially similar job duties that she performed in Peoria. (Id., ¶ 3.) To that end, she was not trained to be the Bakery Manager for any particular Hy-Vee store and her training "mostly involved the same type of work I had been doing as an hourly paid Cake Decorator." (Id., ¶ 4.) After starting the Bakery Manager position, Nicosia participated in weekly Zoom meetings with the Regional Bakery Supervisor, who provided region- and corporate-wide information about sales, promotions, new products, ordering, seasonal merchandising, and store displays. (Id., ¶ 5.)

As Bakery Manager, Nicosia was required to schedule herself to work forty-five hours per week, although she routinely worked more hours than this. (Id., ¶ 13.) When drafting the schedule for the Bakery Department, she had to stay within a weekly labor budget. (Id., ¶ 14.) Because Hy-Vee had a policy and practice of not allowing employees to accumulate overtime, Nicosia had to work extra hours to complete tasks that otherwise would have been completed by hourly employees. (Id.) As Bakery Manager, she had multiple in-store levels of management above her. (Id., ¶ 10.) Most of her time was spent on the same manual labor, physical grocery sales, and customer service work that hourly employees in the Bakery Department performed. (Id., ¶ 17.)

In addition to Nicosia's Declaration, the record includes twenty-two other Declarations from current or former Hy-Vee Department Managers or Assistant Managers who have filed consents to join the case. These Declarations are from Department Managers or Assistant Managers in the Bakery Department (e.g., ECF 36-12), Meat Department (e.g., ECF 36-13), Food Service Department (e.g., ECF 36-16), and Produce Department (e.g., ECF 36-26).[1] The Declarations are substantially similar to Nicosia's in alleging, among other things, that Department

[1] There is also a Declaration from a former "Manager of Perishables" at a Hy-Vee store in West Des Moines, Iowa, who was responsible for oversight of the Core Four Department Managers at that store. (ECF 36-22.)

Managers: received general training, not store-specific training (e.g., ECF 36-12, ¶ 4); received corporate-level guidance on how to perform their work, including a weekly labor budget (e.g., ECF 36-12, ¶ 7; ECF 36-13, ¶¶ 4–5); and otherwise performed largely the same tasks as hourly workers despite not being eligible for overtime pay (e.g., ECF 36-12, ¶¶ 7–8; ECF 36-13, ¶ 13).

*C. Procedural History.*

Nicosia filed a collective and class action complaint in June 2026. (ECF 1.) She brings claims under the FLSA, IMWL, and similar laws in other states to recover unpaid overtime compensation and damages. (Id.) Nicosia now moves for conditional certification of the FLSA class pursuant to 29 U.S.C. § 216(b). (ECF 36.) Her Motion to Certify Class for Issuance of FLSA Notice defines the class as:

> All current and former employees employed by Defendant in store level salary-paid department (including Bakery, Food Service, Meat, and Produce departments) manager-titled positions at an in-store reporting hierarchical level below "Manager Of" category manager(s) (or Assistant "Manager of" category manager(s)), Store Manager(s), and Store Director, and including any additional period of salary-paid work in a training position/training period for such positions, for which they received a salary during the period beginning [filing date of this Motion] until [date the opt-in period begins to run by Court order], paid by Defendant as if exempt from federal overtime pay laws.

(Id., ¶ 1.) At the time of the Motion, in addition to Nicosia, the twenty-two others who have filed consents to join the lawsuit include: Jeffrey Hall, Meat Manager in Vermillion, SD; Trevor Higgins, Food Service Manager in Des Moines, IA; Brett Kelley, Meat Manager in Sioux Falls, SD; Steven Knecht, Food Service Manager in Hamilton, IA; Martin Krause, Produce Manager in Raytown and Belton, MO; Kyle Aldridge, Food Service Manager in Springfield, MO; Alicia Carranza, Bakery Manager in West Des Moines, IA; Veronica Forrett, Produce Manager in Burlington, IA; Jordan Kernan, Meat Manager in Davenport, Iowa; Pedro Rodriguez, Food Service Manager in Charles City, IA; Misty Stearman, Bakery Manager in Springfield, MO; Daniel Olmstead, Produce Manager in Ames, IA; Janette Payton, Bakery Manager in Marion, IA; Laura St. Martin, Bakery Manager in Plymouth, MN; Alan Helle, Meat Manager in Dubuque, IA; Nicole Sanchez, Bakery Manager in Belton, MO; Megan Brewer, Bakery Manager in Olathe and Lawrence, KS; Brian Fee, Meat Manager in Quincy, IL; Brian Meyer, Bakery Manager and Food Service Manager in Quincy, IL; Dustin Deitrick, Food Service Manager in Ankeny, IA; Sean Thill, Food Service Manager in Peoria, IL; and Jessica Harbaugh, Meat Manager in Dyersville, IA. (ECF

1; ECF 8–ECF 12; ECF 16; ECF 20; ECF 21; ECF 30; ECF 33; ECF 36-4–ECF 36-26; ECF 37.) Hy-Vee resists the motion for conditional certification. (ECF 38.)

## II. LEGAL STANDARDS.

### *A. The Fair Labor Standards Act.*

"The purpose of the FLSA 'is to protect the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others.'" *Specht v. City of Sioux Falls*, 639 F.3d 814, 819 (8th Cir. 2011) (quoting *Benshoff v. City of Va. Beach*, 180 F.3d 136, 140 (4th Cir. 1999)). "It does so in part by setting forth substantive wage, hour, and overtime standards." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 11 (2011). This includes, as relevant here, a provision requiring an employer to pay at least minimum wage for each hour worked, 29 U.S.C. § 206(a), and overtime pay for hours above forty per week "at a rate not less than one and one-half times the regular rate at which he is employed," 29 U.S.C. § 207(a)(1).

### *B. Conditional Certification.*

When a plaintiff seeks to certify an FLSA collective action, district courts in the Eighth Circuit have typically proceeded in two stages: "first, the conditional certification or notice stage; and second, the final certification (or decertification) stage." *Frazier v. PJ Iowa, L.C.*, 337 F. Supp. 3d 848, 861 (S.D. Iowa 2018). "In both stages, the burden is on the plaintiff to establish that the members are 'similarly situated'; however, the standard toughens as litigation progresses." *Id.* at 862 (quoting *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 891–92 (N.D. Iowa 2008)). In the first stage, the "main issue for the Court to determine is whether the named plaintiffs demonstrate that they are 'similarly situated' to the proposed members of the collective." *Id.* (citing 29 U.S.C. § 216(b)). Plaintiffs must provide "some factual basis from which the court can determine if similarly situated potential plaintiffs exist." *Robinson v. Tyson Foods, Inc.*, 254 F.R.D. 97, 99 (S.D. Iowa 2008) (quoting *Dietrich v. Liberty Square, L.L.C.*, 230 F.R.D. 574, 577 (N.D. Iowa 2005)). "This is a lenient standard, but the plaintiff nevertheless bears the burden, and 'more than mere allegations' are required." *Frazier*, 337 F. Supp. 3d at 862 (quoting *Robinson*, 254 F.R.D. at 99).

Although the Eighth Circuit has not weighed in on the issue, other federal appellate courts have concluded that the two-step approach to certification does not impose enough of a burden on the plaintiff at the first (notice) stage. For example, in *Richards v. Eli Lilly & Co.*, 149 F.4th 901,

913 (7th Cir. 2025), *cert. denied*, 146 S. Ct. 1503 (2026), the Seventh Circuit held that the plaintiff must "make a threshold showing that there is a material factual dispute as to whether the proposed collective is similarly situated," following which "defendants must be permitted to submit rebuttal evidence and, in assessing whether a material dispute exists, courts must consider the extent to which plaintiffs engage with opposing evidence." *Richards* emphasized that the approach must be a "flexible" one that recognizes the unique circumstances of each case. *Id.* at 914 ("The watchword here is flexibility. . . ."). The Fifth and Sixth Circuit have also imposed heightened burdens on the plaintiff at the conditional certification stage, although the standards they employ vary from one another (and from the approach the Seventh Circuit later adopted in *Richards*). *See Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1011 (6th Cir. 2023) (holding that named plaintiffs must show a "strong likelihood" that they are similarly situated to other employees before notice should issue); *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 443 (5th Cir. 2021) (applying preponderance-of-the-evidence standard because "the FLSA's similarity requirement is something that district courts should rigorously enforce at the outset of the litigation").

If squarely faced with the issue, the Court suspects that the Eighth Circuit would adopt an approach that marries the "strong likelihood" standard used in the Sixth Circuit with the flexible approached used in the Seventh Circuit. Which is to say, Nicosia must present sufficient evidence to establish a "strong likelihood" that she is similarly situated to other putative class members after comparing her evidence with Hy-Vee's and keeping in mind, at this early stage, that (a) genuine factual disputes should be resolved in her favor, and (b) relevant information may be in Hy-Vee's sole possession. The Court will apply this standard here.

## III. LEGAL ANALYSIS.

### *A. Nicosia Has Provided Sufficient Evidence to Show a Strong Likelihood That She Is Similarly Situated to Other Putative Members of the Proposed Class.*

The crux of Nicosia's case is that Hy-Vee is improperly treating Department Managers like her as exempt from the overtime requirements of the FLSA. To establish that she is similarly situated to other Department Managers and Assistant Managers, she submits, collectively, twenty-three Declarations from herself and others in those positions establishing, among other things, the following:

- Hy-Vee classifies all twenty-three employees as exempt;

- Hy-Vee provides uniform job descriptions for their positions that identify the primary duties as customer service, food production, and similar tasks that typically are considered non-exempt;
- the primary duties of Nicosia and the other Declarants are indeed customer service, food production, and similar tasks that typically are considered non-exempt;
- strategic decision-making on subjects like pricing, promotions, and store design comes from the corporate level;
- decisions about hiring, recruiting, and employee discipline are made primarily by higher level employees within the store or at the corporate level; and
- the primary duties for Department Managers and Assistant Managers do not vary materially from store to store.

(ECF 36-4–ECF 36-26; ECF 37.) Nicosia also provides the job descriptions themselves, as well as the Hy-Vee employee handbook. (ECF 36-27–ECF 36-39.)

This is a robust factual presentation. It goes well beyond mere allegations by having employees who hold (or have held) Department Manager and Assistant Manager positions describe their actual experiences in those roles. Nicosia then buttresses those experiences with Hy-Vee's own corporate-wide documents, which reinforce the Declarants' statements that there is a high level of uniformity in the Department Manager positions. Considered in a vacuum, this evidence would establish a "strong likelihood" that Nicosia and other putative members of the collective are "similar in important respects and are subjected to similar policies or circumstances." *Clark*, 68 F.4th at 1011; *Dernovish v. AT&T Operations, Inc.*, No. 09-0015, 2010 WL 143692, at *1 (W.D. Mo. Jan. 12, 2010); *see also, e.g.*, *Mahmood v. Grantham Univ., Inc.*, No. 10-00621, 2011 WL 1899783, at *3 (W.D. Mo. May 19, 2011) (granting motion for conditional certification where plaintiffs presented evidence that employees were denied overtime "[r]egardless of what department they worked in").

In response to this robust factual presentation from Nicosia, Hy-Vee has made a robust factual presentation of its own, including Declarations from employees in the Hy-Vee corporate office and at individual Hy-Vee stores asserting, among other things, the following:

- Hy-Vee makes an individualized decision regarding classification for each Department Manager and Assistant Manager;
- these individual decisions revolve around evaluating how much time the employee spends on management duties versus hands-on duties;

- the individualized decisions also take into account the size of the store, expected future growth, and number of full-time employees;
- there is considerable variation in the work performed by Department Managers who are classified as "exempt," including, by way of example, the fact that some Department Managers supervise as many as thirty-five people while others supervise as few as three; and
- most, but not all, Department Managers in the Core Four Departments (Bakery, Food Service, Produce, and Meat) have been designated as "exempt," whereas most, but not all, Department Managers in other Departments (excluding Pharmacy) have been designated as "non-exempt).

(ECF 38-1–ECF 38-8.) Hy-Vee argues that these Declarations show that Nicosia and the other plaintiff-side Declarants are not "similarly situated" after all.

As a threshold matter, the Court rejects Nicosia's position that Hy-Vee's Declarations should be disregarded at the notice stage. If a defendant in an FLSA case provides evidence casting doubt on whether proposed class members are "similarly situated," it would make little sense from a judicial efficiency perspective to ignore it when ruling on the motion for conditional certification. *See Richards*, 149 F.4th at 913. Indeed, even district courts applying the most lenient standard have recognized that "some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency." *Tegtmeier v. PJ Iowa, L.C.*, 208 F. Supp. 3d 1012, 1019 (S.D. Iowa 2016) (quoting *Andersen v. Wells Fargo Fin., Inc.*, No. 4:11-cv-00085, 2012 WL 12871958, at *3 (S.D. Iowa Feb. 6, 2012)). There is no reason to consider only a plaintiff's factual submissions in determining whether this factual or legal nexus exists. To the extent other district courts have categorically refused to consider a defendant's evidence at the conditional certification stage, this Court respectfully disagrees with them.

This does not mean, of course, that the Court automatically accepts as true the substance of the defense filings. Far from it. Instead, as recommended by the Seventh Circuit in *Richards*, the best use of judicial resources is to compare the Declarations and other evidence submitted by Nicosia with the Declarations and evidence submitted by Hy-Vee to see if, at minimum, there are genuine factual disputes about whether the putative members of the collective action are "similarly situated." *See Richards*, 149 F.4th at 913. If so—and if those factual disputes, if resolved in Nicosia's favor, would establish a strong likelihood that class members are similarly situated—conditional certification is appropriate.

Here, Nicosia has established the existence of genuine factual disputes that, if resolved in her favor, show a strong likelihood that class members are similarly situated. Hy-Vee's argument, in essence, is that because the company reviews Department Managers and Assistant Managers on a one-by-one basis to determine exempt status, the issue of exempt status is inherently individualized. But Nicosia has presented more than twenty Declarations to the effect that the job duties and descriptions for Department Managers and Assistant Managers are more or less the same across the board. Time will tell whether her position holds up after discovery, but, for now, she has satisfied the "strong likelihood" standard when factual disputes are resolved in her favor. *See Bouaphakeo*, 564 F. Supp. 2d at 892 ("[T]he plaintiff need not show that opt in plaintiffs are 'identically situated.'" (quotation omitted)). The Court therefore GRANTS her Motion to Certify Class for Issuance of FLSA Notice.

*B. The Court Approves in Part and Denies in Part Plaintiffs' Proposed Forms of Notice.*

1. <u>The Class Definition Must Be Amended.</u>

Because the Court has concluded that conditional certification is appropriate, it must consider the forms and methods of notice proposed by Nicosia. This analysis starts with Nicosia's proposed class definition:

> All current and former employees employed by Defendant in store level salary-paid department (including Bakery, Food Service, Meat, and Produce departments) manager-titled positions at an in-store reporting hierarchical level below "Manager Of" category manager(s) (or Assistant "Manager of" category manager(s)), Store Manager(s), and Store Director, and including any additional period of salary-paid work in a training position/training period for such positions, for which they received a salary during the period beginning [filing date of this Motion] until [date the opt-in period begins to run by Court order], paid by Defendant as if exempt from federal overtime pay laws.

(ECF 36, ¶ 1.)

As drafted, the definition is too long and confusing to serve the basic purpose of providing notice to putative class members about whether they might be eligible to join the case. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (recognizing that the purpose of notice is to allow potential class members to "make informed decisions about whether to participate"). Indeed, it was only after the Court read the parties' hundreds of pages of legal and factual submissions and asked questions during oral argument that it finally grasped what Nicosia's counsel was trying to accomplish. This is not a good sign. "Simply stated, the [class definition]

needs more Hemingway, less Faulkner." *Doe v. Univ. of Iowa*, No. 3:22-CV-00001, 2022 WL 4182196, at *4 (S.D. Iowa Sept. 2, 2022); *see also* Thomas W. Werner, *Life Lessons Learned Along the Way: The Case of Hemingway v. Faulkner*, MaddinHauser.com (Nov. 1, 2016), https://www.maddinhauser.com/life-lessons-learned-along-the-way-the-case-of-hemingway-v-faulkner/ ("Hemingway is widely identified within (and outside of) the literary community as a writer of short, concise sentences comprised of simple to understand words. . . . By contrast, Faulkner eschewed simple phrasing for verbiage and sentence structure that would challenge even the most well-read of his audience.").

To his credit, Nicosia's counsel acknowledged the awkwardness of the class definition at the hearing on the motion for conditional certification, explaining that he was trying to preemptively address disputes about whether the following groups are included within the class definition: (i) employees with job titles that do not include the word "manager" but have responsibilities that are similar to Department Managers and Assistant Managers, and (ii) trainees for Department Manager and Assistant Manager positions. These potential disputes are not, however, a valid reason to adopt such a cumbersome class definition. Instead, the Court will allow notice to a class defined as follows:

> All current and former Hy-Vee employees who hold or have held the job of Manager, Assistant Manager, Manager in Training, or Assistant Manager in Training in the Bakery, Food Service, Meat, or Produce Departments since November 10, 2023, and were paid by salary and treated as ineligible for overtime pay.

Nicosia's counsel is directed to amend the class definition in all relevant places in the proposed Court-Authorized Notice of Collective Action Lawsuit (the "Notice") and corresponding forms to match this language, as well as to make conforming changes where appropriate elsewhere in the documents. For example, the second paragraph of Section I of the Notice (entitled "Why Are You Getting This Notice, What Is the Lawsuit About, and Are You Eligible to Join?") (ECF 36-2, p. 2) should be amended to reflect the more succinct class definition. Similarly, the proposed Text Notice (ECF 36-3) should state: "The case, Nicosia v. Hy-Vee, Inc., No. 4:26-cv-00259 (S.D. Iowa) alleges that salary-paid Department Managers in the Bakery, Food Service, Meat, and Produce Departments were improperly not paid overtime pay under federal law for overtime hours worked."

The Court understands that this class definition is more limited than Nicosia requested because it does not include Department Managers, Assistant Managers, or trainees in non-Core-

Four Departments like the Delicatessen, Fast & Fresh, Floral, and Wine & Spirits Departments. This is intentional. Hy-Vee's evidence shows that almost no employees in those Departments were classified as exempt. (ECF 38-1, ¶ 22.) Nicosia's Declarations essentially validate the accuracy of Hy-Vee's evidence, as they do not come from anyone who worked as a Department Manager or Assistant Manager in any of the non-Core-Four Departments. Accordingly, including such employees within the class definition would create needless confusion.

The same is true for trying to craft a definition that captures job titles that are modestly different than those set forth in the amended definition above. Hy-Vee's own evidence indicates that the company refers to the relevant employees as "Department Managers." (ECF 38-1, ¶ 22.) Unless discovery yields some legitimate reason to believe that Hy-Vee is hiding similarly situated employees under other titles, there is no reason to complicate the class definition.

2. The Notice Must Be Amended in Other Ways, Too.

As to other disputes regarding the form of the Notice, the Court will require the fourth paragraph under Section I (ECF 36-2, p. 3) to be amended to state the following:

> The Lawsuit. Plaintiff Dawn Nicosia ("Plaintiff") is a former Bakery Manager who was paid by salary and treated as ineligible for overtime premium wages. She filed this lawsuit on behalf of herself and other Department Managers paid by Defendant as they were not owed overtime pay under federal and state overtime pay laws. To date, over 20 current or former Department Managers have joined this lawsuit prior to this Notice. Plaintiff and the others who have joined this lawsuit claim that they, and all other salary-paid Department Managers, were misclassified by Defendant as "exempt" from overtime pay laws and should have been paid overtime premium pay for all weeks in which they worked more than 40 hours in the Department Manager positions within the relevant time period. Defendant denies any wrongdoing or liability and claims that all Department Managers classified as "exempt" from overtime pay under state and federal law were properly classified as such and, accordingly, are not entitled to overtime pay.

The Court will require the last portion of Section II to be amended so that the language in the righthand column of the table next to "**DO NOTHING**" (ECF 36-2, p. 4) states as follows: "By doing nothing, you give up the possibility of a monetary recovery that may come from a trial or settlement of the FLSA claims if Plaintiff and others who have opted to join the case are successful. You also, however, would not be bound by any adverse judgment against Plaintiff and others. Instead, you would retain the right to bring your own claims, provided you do so within the applicable statute of limitations." The Court also will require a corresponding change to the last

two sentences under Section V (ECF 36-2, p. 5), which, as amended, must read as the following single sentence: "You will not be entitled to share in the amounts recovered in this lawsuit, if any, but you will have the right to separately bring your own claims, provided you do so within the applicable statute of limitations."

Finally, the Court rejects Hy-Vee's request to include language in the Notice advising potential class members of the possibility that they will have to pay some portion of Hy-Vee's costs and expenses if Hy-Vee prevails. *See Tremols v. Juan Barcenas Ins. & Fin. Servs., LLC*, No. 5:21-CV-05057, 2021 WL 4896173, at *4 (W.D. Ark. Oct. 20, 2021) ("[A] warning regarding potential costs is not necessary to ensure informed consent because the possibility of an opt-in plaintiff becoming liable for costs is speculative and the Court has discretion in awarding costs.").

3. <u>The Consent to Join Form Must Be Amended.</u>

The proposed Consent to Join Form (ECF 36-2, p. 7) must be amended as follows. First, Paragraph 1 should identify the party simply as "Hy-Vee, Inc." without the words "and/or Hy-Vee's related entities and individuals." Second, Paragraph 2 should be deleted and replaced with: "I consent to be represented by Plaintiff's attorneys and to be bound by any adjudication by the Court." If Plaintiff's counsel wishes to negotiate additional terms with clients regarding designating Nicosia (or someone else) as an agent for decision-making purposes or similar matters, it must do so separately, consistent with the Rules of Professional Conduct.

4. <u>Other Than the Modest Change Noted Above, the Text Notice Is Acceptable.</u>

As noted above, the proposed Text Notice (ECF 36-3, p. 2) should be amended as follows to reflect the amended class definition: "The case, Nicosia v. Hy-Vee, Inc., No. 4:26-cv-00259 (S.D. Iowa) alleges that salary-paid Department Managers in the Bakery, Food Service, Meat, and Produce Departments were improperly not paid overtime pay under federal law for overtime hours worked." In all other respects, the proposed Text Notice is acceptable. The Court rejects Hy-Vee's arguments to the contrary.

5. <u>The Method of Notice Is Acceptable.</u>

The Court approves Nicosia's counsel's proposal to disseminate notice via U.S. Mail, e-mail, and text message. Potential class members will have sixty days to opt-in. Counsel may send a reminder notice at the mid-point of the opt-in period. Consent forms may be signed electronically through an online portal, among other methods.

Within fourteen days, Hy-Vee must provide Nicosia's counsel with the names, mailing addresses, personal email addresses, personal telephone numbers, and (if applicable) employee identification numbers for each person falling within the class definition. In addition, Hy-Vee shall provide the dates of employment of each such person in the position(s) that fall within the class definition.

6. The Court Denies Nicosia's Request for Equitable Tolling.

Finally, the Court denies Nicosia's request for equitable tolling for potential class members. The Court is issuing this ruling one week after the hearing on Nicosia's Motion to Certify Class for Issuance of FLSA Notice and within four weeks of that Motion being fully briefed. Equitable tolling is not necessary or appropriate in these circumstances to ensure the protection of the rights of potential class members.

## IV. CONCLUSION.

The Court GRANTS Nicosia's Motion to Certify Class for Issuance of FLSA Notice (ECF 36) and AUTHORIZES the issuance of notice consistent with this ruling.

**IT IS SO ORDERED.**

Dated: November 10, 2026

STEPHEN H. LOCHER
U.S. DISTRICT JUDGE